**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| LAURA HALL, J.S. (A MINOR BY AND THROUGH HIS BIOLOGICAL MOTHER AND NEXT OF KIN, LAURA HALL), on behalf of themselves and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SWEEPSTEAKES LIMITED, d/b/a Stake.us,<br><br>        Defendant. | Case No. 25-CV-00345-RAH-KFP<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Laura Hall and J.C., her minor child, individually and on behalf of the other members of the below-defined Alabama classes (the "Class"), hereby alleges against Defendant Sweepsteakes Limited, d/b/a Stake.us ("Stake" or "Defendant"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

I.    **BACKGROUND**

1.    This Class Action lawsuit is brought by Plaintiffs seeking damages, declaratory, injunctive, and equitable relief individually on behalf the other Class members, each of whom are Alabama residents who have paid and lost money or other things of value on Stake.us in the last six months, or the spouse, child or next of kin of a loser who lost within the last twelve months. (the "Class").

2.    Stake owns and operates a popular, casino-oriented internet gaming website called www.stake.us.

3.    Stake does not operate to promote or market another product or service; stake.us is the product or service.

4.    Stake.us operates indefinitely and not for a fixed period of time.

5.      On its website, users can play "over 200 industry favorite games by the most reputable providers," including slot games, scratch cards, poker, and other table games such as blackjack and roulette (the "Chance Games").

6.      The Chance Games are games of chance. In fact, Stake admitted such on its website, boasting about "a chance to win big along side [sic] Drake."[1]

7.      The Chance Games are games already declared unlawful and unconstitutional in Alabama, including slot machines, video poker, and other video-amusement games. *See State v. Epic Tech, LLC*, 378 So. 3d 467, 481 (Ala. 2022); *Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 610 (Ala. 2006); *Opinion Of The Justs.*, 795 So. 2d 630, 643 (Ala. 2001).

8.      Stake offers prizes, such as cash-equivalent gift cards or crypto payouts, to online participants who wager money to play the Chance Games.

9.      The prizes offered by Stake can be used as or converted to US currency.

10.     Gambling is constitutionally and statutorily prohibited in Alabama. *See* Ala. Const. art. IV, § 65.

11.     Yet, Stake.us is accessible and operational within the state of Alabama.

12.     Since Stake requires participants to submit consideration for a chance to win a prize, it is an illegal gambling operation.

13.     Plaintiff and Class members each wagered money or other things of value on Stake.us and lost in the last six months.

14.     Moreover, Stake engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama, including causing Plaintiff and Class members to believe Stake.us was approved and certified by the State of Alabama, when in fact it is illegal gambling.

---

[1] https://stake.us/drake

## II.    THE PARTIES

15.    Plaintiff Laura Hall is an Alabama citizen and a resident of Phenix City, Alabama. Plaintiff wagered and lost money on Defendant's illegal gambling website within the last six months. As a result, she suffered an injury in fact resulting in the loss of money and/or property that is recoverable in Alabama. Plaintiff did not know Stake.us was illegal gambling in Alabama. Based on Stake's advertising and website, Plaintiff thought that Stake.us had the approval and certification of the State of Alabama, among other things. Had she known the truth, she would not have participated in online gambling on Stake.us.

16.    Plaintiff J.S. is an Alabama citizen and a resident of Phenix City, Alabama. Plaintiff's mother wagered and lost money on Defendant's illegal gambling website within the last twelve months. As a result, Plaintiff J.S. suffered an injury in fact resulting in the loss of money and/or property that is recoverable in Alabama.

17.    Defendant Sweepsteaks Limited is a for-profit business entity registered in Cyprus and with its registered office at 28 Oktovriou, 313 Omrania BLD, Limassol, Cyprus.  Defendant also operates a U.S office at 13101 Preston RD STE 110-5027 Dallas, TX 75240. Defendant owns and operates Stake.us. Through its website, Defendant conducts business in Alabama, including this District. Stake is not registered to do business in Alabama.

## III.    JURISDICTION AND VENUE

18.    This Court has personal jurisdiction over the parties because Plaintiffs reside in Alabama and submit to the jurisdiction of the Court, and because Defendant, at all times relevant hereto, has systematically and continually conducted, and continues to conduct, business in this State.

19.    Stake.us is an interactive website used for commercial purposes—specifically, gambling.

20.    It was foreseeable and intended that Alabama residents would use the Stake.us website because Defendant knew that Alabama residents frequently gamble on the website and that they would continue to do so.

21.    Defendant knows that Alabama residents use the website because it asks users to disclose which state they live in when registering to use the website.

22.    In fact, Stake encouraged it by not listing Alabama as an excluded territory.

23.    Stake also advertises to Alabama residents in Alabama.

24.    In other words, Stake reached into Alabama and invited its customers to participate on its website.

25.    Stake.us appeals to, and profits from, an audience in Alabama, and Alabama residents form a significant portion of the website's customer base.

26.    Defendant took steps to ensure that Alabama residents would have access to the website so that they could gamble online.  Specifically, there is widely available technology that allows websites to detect the location of a website visitor, including the state in which they are located.  Reputable online gambling companies utilize this technology to prevent website users from using their websites if the website user is located in a state where online gambling is illegal, like Alabama.  However, Defendant made an affirmative decision to *not* use that technology for the Stake.us website, because that would prevent Defendant from profiting from gambling in Alabama.

27.    This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and one or more of the other Class members are citizens of a different state than Defendant. Venue is proper in this District under 28 U.S.C. § 1391 because Stake is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, Plaintiff wagered and lost money on Stake.us in this District, and Stake has marketed and advertised its website in this District, made its website accessible in this District, and accepted wagers in this District, among other things. Thus, a substantial part of the events or omissions giving rise to the claim occurred within this District.

## IV.    THE PROBLEM OF ONLINE GAMBLING

28.    The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited from opioids.

4

29.     For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $7 billion.  But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline.  According to one study, up to 30 percent of problem gamblers have attempted suicide, while a larger percentage of such individuals reported having suicidal ideations.

30.     The United States may be on the cusp of an explosive growth of gambling addiction akin to the opioid crisis, fueled by online access to gambling websites.  Gambling disorder can take as long as five to seven years to develop.  During the last five to seven years, online gambling websites proliferated with no way to reduce the ensuing harm.  The federal government spends no money on gambling addiction programs, and state gaming commissions regulate gambling unevenly, at best.

31.     The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts spouses, partners, children, and employers.

32.     Online gambling addiction also has massive social consequences, resulting in the drain on state government funds to address addiction, the rise in teenage online gambling addiction, and the rise in crime associated with online gambling addiction.

33.     This rise also includes a relatively new phenomenon: gambling addiction among minors under the age of 18.  Whereas brick-and-mortar casinos could take steps to exclude minors, the easy access to online gambling has made it easier for underage minors to participate in gambling.  Websites like Stake.us are designed to attract adolescents as well as adults, and are causing a sharp rise in online gambling addiction among minors.

34.     Treating online gambling addiction poses challenges that are different from other forms of addiction.  For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment.  Things are not so clear-cut when treating digital gambling because for most people, mobile devices

have become a necessity of life.  So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal.  Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

35.    To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like Stake.us are unlicensed and unregulated.  As one gambling treatment provider warned, "[u]nregulated platforms [like Stake.us] can pose significant risks for players struggling with gambling addiction.  The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

36.    For example, Stake accepts credit cards to pay for gambling on its website, in violation of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367.  As a result, people have racked up massive debt gambling on Stake.us.

37.    The bottom line is that Stake lets people play online casino games and wager real money while defying this state's constitutional prohibition against gambling, offering inadequate player protection, exploiting adolescents, and siphoning revenue from this state.

38.    In Alabama, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker.  In this regard, Alabama has a fundamental and deep-rooted public policy against gambling.

## V.    DEFENDANT STAKE OPERATES A GAMBLING WEBSITE

39.    Stake owns and operates a popular, casino-oriented internet gaming website called www.stake.us.

40.    Stake began as a project in 2013 to create on online cryptocurrency dice game called "Primedice."  Court documents in litigation between the founders reveal that when the project was

being developed, the founders freely referred to the website as "gambling," and knew there were "potential criminal and tax issues" with the concept, but proceeded anyway.

41.     The project eventually "evolved" into Stake.com—aka "Stake.us." in the United States.

42.     While Stake's new website was in development, its CEO Edward Craven publicly touted Stake as "a massive project" that "**pretty much covers all aspects of gambling**."

43.     Today, Stake.us is a thriving illegal gambling operation that offers various online casino games, such as slot games, scratch cards, poker, and other table games such as blackjack and roulette (i.e., the Chance Games).

44.     The website also offers a "live casino" where online players interact directly with live dealers visible via a webcam to play games like blackjack and roulette:



45.     Stake relies heavily on Instagram and other social media for advertising, often bolstered with celebrity endorsements from Canadian rapper, Drake. The Instagram profile for the European version of Defendant's website, called Stake.com, describes it as the "World's Leading Betting Platform."



46.    On Stake's U.S. and European Instagram channels, Stake constantly refers to "gambling," such as the promotion with Drake shown below, describing "The First Gambling Stream of 2025" and the others showing roulette and card tables.




47.    Gambling has been good to Stake and its founders.  Stake's websites now handle over 4% of all Bitcoin transactions in the world, a figure that is staggering when considering the total size of the cryptocurrency economy.  Stake processes $219 billion in Bitcoin transactions annually, an amount that far exceeds the financial turnover of many legitimate financial institutions.

48.    Online gambling websites like Stake.us are fueling a steep rise in online gambling addiction, due in part to the easy access to gambling from any place with an Internet connection. Internet forums are awash with stories of people struggling with online gambling addiction generally, and Stake.us specifically.  The troubles they describe—massive losses, relationship troubles, suicidal thoughts—are age-old stories in the context of gambling.

49.    Defendant's website includes a webpage warning users to monitor for signs of gambling addiction and provides a link to gambling addiction organizations like Gaming Addicts Anonymous and the Financial Counseling Association of America.  And yet at the same time,

Stake gaslights its users, including vulnerable populations like minors and people struggling with gambling disorder, by claiming that the operation is a "legal sweepstakes" and does not involve "real money gambling."  Stake's claims that it offers a "legal sweepstakes" is a sham.

50.    In short, Chance Games offered on the website are gambling, and they are no different than if they were played in a Las Vegas casino.

51.    The website is accessible and made available to Alabama residents.

## VI.    STAKE HAS MASSIVELY SCALED UP AN OLD GIMMICK THAT CRIMINALS ONCE TRIED TO USE TO EVADE GAMBLING LAWS

52.    Stake will ask the Court to disbelieve its own eyes and conclude that Stake.us is not really a gambling operation, but instead offers legal "sweepstakes."  That is an old gimmick that was once popular among criminals in the early 2000s.  As detailed below, courts and law enforcement agencies consistently determined that the same business model Stake utilizes today is a pretext for illegal gambling.  A federal district court has already held on summary judgment that one of Stake's competitors that operates materially the same way is an illegal gambling operation.  *See Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076 (W.D. Wash. 2024).

### A.    The Internet Café "Sweepstakes" Crime Trend Of The Early 2000's

53.    The early 2000s saw a nationwide crime trend where criminals attempted to evade gambling laws by offering gambling at so-called "Internet cafés."  These operations—often located in suburban strip malls— "promoted" the sale of products such as Internet time or long-distance telephone minutes by offering "free" sweepstakes entries to customers.  When customers purchased the product, they received a corresponding number of "sweepstakes" points for each dollar spent.  Customers then used those sweepstakes points to play "casino-style" slot machine games for cash prizes at computer terminals provided at the Internet cafés.

54.    Most states' gambling laws require three elements: prize, chance, and consideration.  By artificially separating the consideration from the chance to win real money, criminals believed that they could evade state gambling laws, while claiming that the activities

were no different from the sweepstakes promotions offered by Publisher's Clearing House and McDonalds.

55.    Courts and state law enforcement officials in the United States, including in Alabama, repeatedly determined that such tactics were an obvious pretext and cover for illegal gambling.

56.    The Alabama Supreme Court addressed the issue directly in *Barber v. Jefferson Cty. Racing Ass'n, Inc.*, 960 So.2d 599, 602-605 (2006), where the owners opened an "[I]nternet café" that offered a continuous "sweepstakes promotion" whereby customers could receive 100 entries for each dollar spent on computer access and Internet time.  The Alabama Supreme Court rejected every argument for why this gimmick was not gambling—including the argument that there was "no consideration" for the entries because people were only buying Internet time, and because people had the option to obtain free chances by mail without purchasing Internet time. *See id.* at 612.

57.    The outcome in *Barber* is consistent with the view taken by courts and law enforcement agencies across the country.

58.    For example, an individual in Mississippi was convicted of racketeering and gambling charges in connection with an Internet café where—like here—customers could play simulated games that resembled gambling programs, such as slot machines, keno, and poker. Customers needed a "sweepstakes" code to play the game, but customers could not purchase a sweepstakes code outright.   Instead, customers received sweepstakes codes by purchasing something else in the store, such as food or phone minutes.

59.    In 2015, the California Supreme Court addressed Internet café gambling in *People ex rel. Green v. Grewal*, 61 Cal. 4th 544 (2015), where the defendant sold Internet time on computer terminals.  The defendant promoted the sale of Internet time and other products with a "sweepstakes" giveaway, wherein the defendant provided 100 "sweepstakes points" for each dollar spent, which could then be used to play games of chance.  The defendants denied that the operation involved gambling because they were supposedly only selling computer time, and that

the sweepstakes games were "not gambling" but instead a "promotional game."  The Kern County District Attorney obtained a civil injunction for violations of California's gambling laws, and that injunction was affirmed on appeal.

60.    In 2011, three individuals—including a Fall River, Massachusetts City Counsil member—were indicted and charged with various gaming charges in connection with the operation of two Internet cafés in Massachusetts.  The defendants unsuccessfully argued that players were only paying for Internet time and that any gambling that occurred involved legitimate sweepstakes offers.  The Massachusetts Attorney General stated unequivocally that this conduct constituted illegal gambling.

61.    The Ohio Court of Appeals said it best when rejecting a similar sweepstakes scheme in *City of Cleveland v. Thorne*, 987 N.E.2d 731 (2013): "**the justice system is not some lumbering oaf who must ignore the patently obvious gambling scheme apparent here simply because of a contrived separation between consideration and the scheme of chance**."  The court added, "there is no justification for ignoring the nature of the transaction simply because the system is designed in such a way as to artificially isolate one part of the illegal transaction from another.  The justice system is not so blinded by chicanery."

**B.    Stake.Us Is An Online Version Of An Internet Café**

62.    Like the Internet cafés in operation a decade ago, Stake attempts to separate the element of consideration from chance by offering a two-tiered system of virtual coins, both of which function like casino chips, while calling the whole affair a "sweepstakes."

63.    The first type of virtual currency, called "Gold Coins," can be used to play the casino games in "Standard Play" mode with no potential to win money.  When using Gold Coins, a player can only win or lose Gold Coins.  However, for the most part, people only go to Stake.us to engage in real-money gambling, so those Gold Coins are largely ignored.

64.    The second type of virtual currency—called "Stake Cash"—can be used to play the same casino-style games in a "Promotional Play" mode, where they carry real monetary value and can be redeemed for cryptocurrency.  To get Stake Cash, players typically must purchase them in

a package with Gold Coins.  Stake pretends that the "Stake Cash" is a "free" bonus added to the sale of Gold Coins, but as shown above, that is the same tactic Internet café owners unsuccessfully argued before when trying to artificially separate the element of consideration from the other elements of gambling.

65.    There are two other problems with the notion that Stake Cash is just a "free" add-on bonus to the Gold Coins.

66.    First, as noted above, most people ignore the Gold Coins after buying them.

67.    Second, and more importantly, Stake Cash is a proxy for real money.  Depending on the package bought, there is nearly 1:1 correlation between the number of dollars spent and the amount of Stake Cash provided in each purchase.  If someone spends $20 dollars ostensibly to by Gold Coins, they get 20.05 Stake Cash Coins to use for gambling; whereas if they spend $50, they will get 50.12 Stake Cash Coins, and so on:



68.     Likewise, Stake Cash is redeemable on a 1:1 basis.

69.     The $9,000 per day "maximum buy" underscores the large amounts of money being gambled on Stake.us.  Nobody spends $9,000 a day just to play video games.

70.     In short, Defendant is copying the Internet café playbook, but instead of selling Internet time, long-distance phone minutes, or small groceries coupled with supposedly "free" sweepstakes tokens, Defendant sells Gold Coins, which are then ignored so that players can use the Stake Cash for cryptocurrency gambling.  The owners of a competitor gambling website that operates the same way as Stake.us in all material respects, called ChumbaCasino.com, publicly admitted in a securities filing that social casino gaming websites like Stake.us are modeled after

67  Over the last 10 years, 'Internet Sweepstakes Cafes' have evolved and proliferated across the US. They operate as internet cafes that offer their customers entrance into a sweepstakes draw upon the purchase of a product, often internet time or telephone call minutes. The participant can find out whether they have won the pre-determined draw by a simple reveal but many choose to do so through a programme that simulates a slot machine or poker game. This may even include an online element, but neither the presentation nor their interaction affects the outcome of the draw.

68  Increasingly sweepstakes gaming has emerged out of these cafes, with consumer products allowing 'free' entrance into games in which cash prizes can be won in return.

reported to have turned over $10bn (€9.4bn) in 2015, with over 5,000 now operating in 12 states" (*id.* at 69), and described the "significant opportunity" of adopting the "sweepstakes café model." *Id.* at 95-96.

72.     In sum, the parallels between Stake.us and the Internet sweepstakes café scheme are clear:

✓ Both sell a "product" that comes with a commensurate number of "free" sweepstakes entries to play real money 'casino-style' games of chance in a 'casino-like' setting. Instead of the cafés selling a "prepaid phone card," Defendant sells a virtual gold coin and gives a commensurate amount of "free" Stake Cash.

✓ Both run sweepstakes games perpetually and not on a limited and occasional basis, as is typical with legitimate promotional sweepstakes like the McDonald's Monopoly sweepstakes.

✓ Both offer casino-like payouts, typically 90% or more of revenues, whereas legitimate promotional sweepstakes normally have very low prize to entrant ratios.

✓ Both offer several ways to get free entries without requiring a product purchase, such as by mailing a postcard to a designated P.O. Box address, although the number of free entries awarded through this method is a very low amount, if anything at all.

✓ In addition, the "casino-like atmosphere" of Stake.us further supports the conclusion that the true purpose of the website is "to legitimize illegal gambling." *U.S. v. Davis*, 690 F.3d 330, 339 (5th Cir. 2012).

73.    Moreover, Stakes does not offer free-play tokens at stores or other locations across the state of Alabama.

74.    Stake does not operate for a fixed duration to promote or market a product or service, Stake.us operates indefinitely and *is* the product or service.

**C.    Defendant Misleads The Public With False Claims Of Legality**

75.    Stake also engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing confusion that participation in Stake.us is legal in Alabama.

76.    In its terms and conditions, Stake states "[i]f you live in any of the excluded territories identified below, do not proceed any further as you are not eligible to access or use the platform, create a customer account, play the games or interact with Stake in any other way."

77.    Stake further lists the following "Excluded Territories" in the terms in condition:

any country other than the continental United States of America and Hawaii ("US"); Washington, New York, Nevada, Idaho, Kentucky, Michigan, Vermont, New Jersey, Delaware, West Virgina, Pennsylvania, Rhode Island, Connecticut, and any other states or jurisdictions which, under the laws applicable to you, are legally precluded from playing the games offered on the Platform, and any other jurisdiction Stake excludes, in its sole discretion, from time to time."

78.    Stake does not include Alabama as an excluded territory, although online gambling in any form is strictly prohibited by the State of Alabama.

79.    Further, Stake states that, if the user is in an excluded territory, the user would not be able to access or even use the platform, create an account, play the games, or interact with the Stake in any other way. But Stake.us is accessible in Alabama, which causes the users to believe that Alabama permits such online gaming.

## VII.    ALL PURPORTED CONTRACTS WITH DEFENDANT ARE VOID, UNCONSCIONABLE, ENTERED INTO THROUGH FRAUD, AND ILLUSORY

80.    The only consideration paid by Plaintiffs and the Class members was wagers to gamble.

81.    In Alabama, "[a]ll contracts founded in whole or in part on a gambling consideration are void." §8-1-150, Ala. Codd 1975.

82.    Thus, no contract was ever formed between the parties, and any purported contract between herself and Defendant, and any contractually based defenses Defendant may raise are likewise void.

83.    And the *entire* contract is void, because "even if the arbitration provision is severed from the rest of any 'contract,' the arbitration provision itself is void as a matter of law pursuant to § 8–1–150." *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152, 167 (Ala. 2016).

84.    Even if not void, they are unconscionable as the terms and conditions is an adhesion contract.

85.    Plaintiffs and Class members had no opportunity to negotiate the contract terms, and the terms never changed for any Class member.

86.    Plaintiffs and Class members had *zero* bargaining power.

87.    Plaintiffs and Class members could not have used Stake.us unless they agreed to the terms and conditions, and they could not have obtained comparable products or services unless they agreed to arbitrate.

88.    The terms and conditions are not easily accessible, and the arbitration clause is not conspicuous. Instead, it is buried in a sea of font, in the same color and same type, not bold or in capital letters, and doesn't require an independent signature or acknowledgement.

89.     The terms and conditions also unconscionably limit Plaintiffs' and Class members' damages, and do not afford them an opportunity to select or have a say in the arbitrator(s).

90.     Moreover, the scope of the arbitration agreement is too large, covering every single claim against every single party, known or unknown.

91.     The inclusion of a class action waiver is also unconscionable as the only practical effect is to chill or prevent claims, affording Stake immunity.

92.     Moreover, the expenses and forum are unfair and unconscionable, as the cost to pursue individual arbitration likely exceeds the reward, further chilling and preventing claims and affording Stake immunity.

93.     In sum, Plaintiffs and Class members paid to forgo everything – inability to protect their statutory and constitutional rights – and Stake gains immunity at no cost. Plaintiffs and Class members were not given a *quid pro quo* for agreeing to arbitrate and forgoing their constitutional right to a trial by jury.

94.     Moreover, Plaintiffs and Class members were fraudulently induced into entering these contracts. Stake misrepresented that Stake.us was legal in Alabama, on which Plaintiffs and Class members relied. Had Stake disclosed the truth that Stake.us is not legal in Alabama, Plaintiffs and Class members would not have entered into the contract with Stake.

95.     Finally, the terms and conditions are illusory, since "Stake reserves the right to amend these Terms, or to implement or amend any procedures, at any time" without prior notice.

## VIII.   CLASS ACTION ALLEGATIONS

96.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

97.     The Plaintiffs seek to represent the following Alabama Classes ("Class") defined as:

> All Alabama residents who have paid and lost money or other things of value on Stake.us in the last six months.

> All spouses, children, or next of kin of Alabama residents who have paid and lost money or other things of value on Stake.us in the last twelve months.

98.    Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

99.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

100.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**.  The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiffs are informed and believe that there are hundreds to thousands of members of the Class, the precise number of Class Members is unknown to Plaintiffs, but may be ascertained from Defendant's books and records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

101.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether Defendant engaged in the conduct alleged herein;

    b.    Whether Defendant's alleged conduct violates applicable law;

    c.    Whether Stake.us is illegal gambling in Alabama;

    d.    Whether Plaintiffs and Class members wagered and lost money or other things value on Stake.us in the last six months in Alabama;

    e.    The amount of money or other things of value wagered and lost by Plaintiffs and Class members over the last six months in Alabama;

    f.    Whether Defendant engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama;

g. Whether Defendant's unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama were likely to deceive Class members;

h. whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

i. the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

102. **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the Class members wagered and lost money or other things of value on Stake.us within the last six months in Alabama.  Also, neither Plaintiff nor the other Class Members would have participated on Stake.us had Defendant not engage in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.  Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which Defendant engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

103. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representative because her interests do not conflict with the interests of the other members of the Class that she seeks to represent, Plaintiff retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

104. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

105.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the Class members to individually seek redress.  Even if the Class members could afford litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

106.    **Ascertainability –** Stake maintain a robust database with all its participants. Each participant must create an account to participate and must select and verify which state they are from. Stake also assigns each participant's account an individually identifiable number, and Stake tracks winning and losses, because it controls how much a player can wager and cashout a day.

## IX.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT
### 28 U.S.C. §§2201 *et seq.*

107.    Plaintiffs incorporate by reference the allegations contained in paragraphs 28-106 of this Complaint.

108.    Plaintiffs bring this count individually and on behalf of all other Class members.

109.    Alabama law strongly prohibits any form of gambling.

110.    In fact, gambling is constitutionally prohibited. Ala. Const., Art. IV, §65.

111.    In Alabama, gambling occurs when one "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome."

112.    In Alabama, "Something of value" is defined as "[a]ny money or property, ... or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service entertainment or a privilege of playing at a ... scheme without charge."

113.    In Alabama, a game is chance-based, not skill-based, when more chance is involved in the outcome than skill. Stake operates an illegal gambling website (Stake.us) wherein participants pay consideration for the chance to win a prize.

114.    The Chane Games offered by Stake are predominantly games of chance and do not involve any level of skill.

115.    The prizes Stake offers are valuable and can be used as or converted into US currency.

116.    Stakes operate an online casino, not a sweepstakes. In Alabama, "even though the player is assured of his money's worth of some commodity and hence cannot lose," it is still illegal gambling. In fact, even paying back up to 98% of all money played is illegal gambling (where the typical sweepstakes payout is 50%). And the duration of traditional sweepstakes is limited, not indefinite, like Stake.us. And just because Plaintiff and Class members can play for free does not safe Stake.us, the Alabama Supreme Court has long held that the availability of free chances is not necessarily dispositive of whether the game is a gambling scheme: "That the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid." *Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 614 (Ala. 2006). Moreover, Stake does not promote or market a good or service, it is the good or service. And Stake does not offer any free-play tokens available at any location in Alabama.

117.    Plaintiffs and Class members each paid money or other things of value to Stakes to play the Chance Games for the sole purpose of winning a prize (gift cards or cryptocurrency).

118.     Plaintiffs and Class members seek an order declaring that (1) Stakes.us is illegal gambling in Alabama and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Stakes from operating Stakes.us in Alabama, with disgorgement of profits.

119.     Plaintiffs and Class members also seek a speedy declaratory judgment hearing pursuant to Fed. R. Civ P. 57.

<u>SECOND CAUSE OF ACTION</u>
**ALABAMA GAMBLING LOSS RECOVERY STATUTE**
**Ala. Code §§ 8-1-150, *et seq.***

120.     Plaintiffs incorporate by reference the allegations contained paragraphs 28-106 of this Complaint.

121.     Plaintiffs bring this count individually and on behalf of all other Class members.

122.     Plaintiffs are similarly situated as other Class members, as each are Alabama residents who have either paid and lost money or other things of value on Stake.us in the last six months, or are the spouse, child, or next of kin of an Alabama resident who paid and lost money or other things of value on Stake.us in the last six months.

123.     Stake operates an illegal gambling website that is accessible in Alabama.

124.     In the last six months, Plaintiffs and other Class members paid and lost money or other things of value to Stake on Stake.us.

125.     Plaintiffs and other Class members demand recovery of the money or other things of value paid and lost to Stake on Stake.us in the last six months in an amount to be determined at trial, including interest.

126.     Plaintiffs also seek recovery of money or other things paid and lost on Stake.us in the last twelve months on behalf of the spouses, children, and next of kin of the losers.

127.     Plaintiffs and Class members also seek an order declaring that (1) Stakes.us is illegal gambling in Alabama and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Stakes from operating Stakes.us in Alabama, with disgorgement of profits.

### THIRD CAUSE OF ACTION
**VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**Ala. Code §§ 8-19-1, *et seq*.**

128.    Plaintiffs incorporate by reference the allegations contained in paragraphs 28-106 of this complaint.

129.    Plaintiffs bring this count individually and on behalf of all other Class members.

130.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of Ala. Code § 8-19-3.

131.    Plaintiffs and the Class members are "consumers" within the meaning of Ala. Code § 8-19-3.

132.    Defendant offered "goods" and/or "services" within the meaning of Ala. Code § 8-19-3.

133.    Defendant is engaged in "trade" or "commerce" within the meaning of Ala. Code. § 8-19-3.

134.    The Alabama Deceptive Trade Practices Act (ADTPA), Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

135.    The ADTPA provides a non-exhaustive list of unconscionable, false, or deceptive acts or business practices, including but not limited to:

    a.    Causing confusion or misunderstanding of approval of good or services;

    b.    Causing confusion or misunderstanding as to the certification of another of goods or services;

    c.    Representing that goods or services are of a particular standard if they are not; and

    d.    Engaging in any other unconscionable, false, misleading, or deceptive act or practice.

136.    Defendant violated the ADTPA by misrepresenting or causing confusion or misunderstanding that gambling on Stake.us is legal and approved or certified by the State, when in fact it is illegal gambling in Alabama.

137.    Defendant further violated the ADTPA by representing that the goods or services are of a particular standard and legal in Alabama, when in fact gambling is illegal in Alabama.

138.    Defendant further violated the ADTPA by representing, implying, and/or failing to disclose that its goods or services are illegal in Alabama, which is an unconscionable, false, misleading, and/or deceptive act and/or business practice.

139.    Other unconscionable, false, misleading, and/or deceptive act and/or business practice employed by Defendant include:

    a.    deceiving or confusing customers into believing that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are prohibited by law; and

    b.    representing that the website users will receive an economic benefit (in the form of gambling winnings), when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

140.    To the extent required by law, Defendant owed a duty to Plaintiffs and the Class because disclosure that participation on its website is illegal was necessary to dispel misleading impressions that participation on Defendant's website was legal.

141.    Defendant's unfair or deceptive acts or practices were likely to, and did, in fact, deceive Plaintiffs and Class members about the true approval, certification, and legality of its goods or services.

142.    Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

143.    Defendant acted with knowledge and intent to deceive.

144.    Plaintiffs and Class members suffered ascertainable losses and actual damages as a direct result of Defendant's conduct. Plaintiff and other Class members would not have participated on Stake.us had Defendant disclosed the true nature of Stake.us.

145.    Pursuant to Ala. Code § 8-19-10, Plaintiff and the Class members seek an order enjoining Defendant's unfair and/or deceptive acts or practices and awarding damages, treble damages, and any other just and proper relief available under the ADTPA.

146.    Notice is not required since Defendant does not maintain a place of business or does not keep assets within Alabama.

## X.    <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B.    Declaring that Stake.us is illegal gambling in Alabama and that any authority under which it purports to operate is not Constitutional;

C.    Enter a permanent injunction permanently enjoining Defendant from operating Stake.us in Alabama;

D.    Ordering Defendant to refund all wages lost by the Class and pay actual and statutory damages (including punitive damages) and restitution and disgorgement of profits to Plaintiff and the Class, as allowable by law;

E.    Ordering Defendant to pay both pre- and post-judgment interest on any amount awarded;

F.    Ordering Defendant to pay attorneys' fees and costs of suit; and

G.    Ordering such other and further relief as the Court may deem just, equitable, and proper.

## <u>**JURY TRIAL DEMAND**</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 23, 2025

/s/ Leon Hampton Jr.
LEON HAMPTON JR.
W. DANIEL "DEE" MILES, III
JAMES MITCHELL WILLIAMS
PAUL W. EVANS
*Attorneys for Plaintiff*

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 FAX
leon.hampton@beasleyallen.com
dee.miles@beasleyallen.com
mitch.williams@beasleyallen.com
paul.evans@beasleyallen.com


/s/ Joel D. Smith
JOEL D. SMITH
*Attorney for Plaintiff*

OF COUNSEL:

SMITH KRIVOSHEY, PC
867 Boylston Street
5th Floor #1520
Boston, Massachusetts 02116
joel@skclassactions.com