IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAURA HALL, *et al.*, *individually and on behalf of all others similarly situated*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SWEEPSTEAKES LIMITED d/b/a )<br>STAKE.US, )<br>)<br>Defendant. ) | CASE. NO. 3:25-cv-345-RAH |

**MEMORANDUM OPINION AND ORDER**

Sweepsteakes Limited d/b/a Stake.us operates an online gaming website. According to Plaintiff Laura Hall, the website includes casino-style games of chance that she claims are illegal under Alabama law. Hall seeks damages and declaratory and injunctive relief on a class-wide basis.

Stake has moved for arbitration, invoking the arbitration agreement contained in the account terms and conditions that Hall and all other account holders agreed to as a condition of using Stake's website. The arbitration motion is opposed and fully briefed. After careful review, the motion is due to be granted.

**BACKGROUND**

Stake operates a Cypress-based online gaming website that offers virtual casino-style games such as slots, scratch cards, poker, and other table games. A player can access the website and play games for free using "gold coins" in which the player pays nothing and receives nothing in return. But according to Hall, a player can also purchase additional gold coins. Along with purchased gold coins comes "stake cash," which are received as a bonus. Players can then use the stake

cash to wager for monetary prizes. Hall claims that she has wagered and lost money on Stake's website. She also claims that the games on the website constitute illegal gambling under Alabama law. Hall seeks damages on behalf of herself, her minor child, and a punitive class under Ala. Code § 8-1-150(a).

Stake seeks enforcement of the arbitration agreement contained in the terms and conditions that govern a player's use of the website. To play games on Stake's website, a player must create a user account. To do so, the player must enter their name, email address, username, password, state of residence, date of birth, and agree to Stake's Terms and Conditions (TOC). If a player does not agree, they cannot use the website. The TOC is presented to the player in a "scrollwrap format," which requires the player to scroll through the entire TOC before clicking a checkbox stating, "I have read and agree to the terms and conditions." (Doc. 27 at 7.)

Pertinent to the time Hall used the website, the TOC contained a bolded and underlined dispute resolution agreement that stated the following:

> **We both agree to arbitrate. By agreeing to these Terms, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and/or this clause 26 (Dispute Resolution and Agreement to Arbitrate) as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the rules of which are deemed to be incorporated by reference into this clause.**

(Doc. 27-2 at 22.)[1]

---

[1] While these were not the verbatim terms and conditions when Hall opened her account, they are the terms and conditions that were published on the platform and in use when Hall last accessed the account. Thus, they control. *See Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1228 (11th Cir. 2012) (applying amended terms and conditions where party received notice of the changed terms on the company's website).

2

The dispute resolution provision broadly defined "Disputes" as "all past, present and future disputes, claims or causes of action between you and Stake . . . which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake . . . including as to the arbitrability of any of the foregoing, and whether arising prior to or after your agreement to this clause." (*Id.* at 21–22.)

## LEGAL STANDARD

Motions seeking to compel arbitration are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The principal purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Generally, "[t]he role of the courts is to 'rigorously enforce agreements to arbitrate.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Dean Witter Reynolds, Inc.*, 470 U.S. at 221). Thus, the FAA "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation omitted).

A court's ruling on a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the legal standard is analogous to a summary judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). If the court concludes there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017)

3

(quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). "If, on the other hand, the making of the agreement is in issue, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4).

## DISCUSSION

Before a district court refers a dispute to an arbitrator, "the court [must] determine[] whether a valid arbitration agreement exists." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). Arbitration agreements may include multiple levels of agreements concerning arbitration. For one, contracting parties can "agree to send the merits of a dispute to an arbitrator." *Id.* at 148. They can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)).

Arbitrability concerns "fundamental questions that will determine whether a claim will be brought before an arbitrator." *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018). These include "scope" or "applicability" of the parties' arbitration agreement; that is, what set of disputes the arbitration agreement covers and whether it governs the issues at hand. *See id*. These also include issues that concern the "validity" or "enforceability" of an arbitration agreement; that is, whether the parties have entered into a legally operative arbitration agreement. *See Caley*, 428 F.3d at 1367–68.

Accordingly, whether a particular claim is to be decided by a court or an arbitrator "turns upon what the parties agreed about that matter." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (emphasis omitted) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). By default, "a court would normally decide threshold disputes about whether a party's claims are arbitrable." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). Still, these gateway issues can be expressly delegated to the arbitrator where

4

"the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). This is often known as a "delegation clause." *See Coinbase, Inc.*, 602 U.S. at 150–52. A delegation clause "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Where "an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). "Only if [the court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016).

A delegation clause may be unenforceable for the same reasons as any other contract. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). State law governs questions regarding the validity, revocability, and enforceability of arbitration agreements and delegation clauses. *See Caley*, 428 F.3d at 1368. To mount a successful challenge to the delegation clause, a plaintiff must allege a defense such as "fraud, duress, unconscionability, or another generally applicable contract defense" to the delegation clause *specifically*, and not just the contract as a whole. *Parnell*, 804 F.3d at 1146 (quotation omitted).

Here, Hall concedes that the TOC contains an arbitration agreement and that the arbitration agreement contains a delegation clause. She nevertheless argues the arbitration agreement is unenforceable because it and the embedded delegation clause lack legal consideration; lack mutuality of obligation; are unconscionable; and were procured through fraud. Hall further claims that the declaratory relief

5

sought in Count 1 falls outside the scope of the arbitration agreement. Stake argues that Hall's assertions are issues of contract enforceability and validity—that is, arbitrability—and are therefore issues for the arbitrator to resolve because of the delegation clause found in the arbitration agreement.

The arbitration agreement provision contains the following language: "[A]ny and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms . . . as well as the decision of whether the Dispute should be arbitrated in the first place, shall be referred to and finally resolved by arbitration." (Doc. 27-2 at 22.) This language constitutes the typical type of delegation language regularly enforced by courts. *See Rent-A-Center*, 561 U.S. at 65.

That is not the sole source of the parties' agreement to delegate certain threshold issues. The arbitration agreement also requires the arbitration to be administered by the American Arbitration Association ("AAA") and incorporates the AAA's rules into the arbitration agreement. (Doc. 27-2 at 22.) Rule 7(a) of the AAA's Consumer Arbitration Rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[2] By incorporating the AAA into their agreement, Stake and Hall clearly and unmistakably agreed to arbitrate threshold arbitrability disputes. *See Attix*, 35 F.4th at 1297–98 ("[I]n two separate provisions of their agreement—an express delegation clause and an incorporation of the AAA rules for consumer arbitrations—Attix and Carrington clearly and unmistakably agreed to submit questions of arbitrability to an arbitrator.").

---

[2] Am. Arbitration Ass'n, Consumer Arbitration Rules and Mediation Procedures, https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf.

Because of the express delegation clause in the arbitration agreement, along with the incorporation of AAA's arbitration rules, Hall and Stake agreed to delegate questions of arbitrability to an arbitrator. That agreement is clear and unmistakable. The question therefore becomes whether the Court may entertain Hall's arguments in opposition to enforcement of the arbitration agreement, or whether her arguments constitute issues of arbitrability delegated to the arbitrator. The Court concludes that all but her first argument—that the delegation clause is unsupported by valid consideration—are issues of arbitrability for the arbitrator to resolve in the first instance.

First, Hall argues that the arbitration agreement and the delegation clause cannot be enforced because they are founded in whole or in part upon illegal gambling consideration. The Court disagrees.

To the extent this argument is tied to the contract as a whole or the arbitration agreement generally, it is an issue of validity and enforceability that has been delegated to the arbitrator.[3] *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012) (per curiam) ("[I]t is a mainstay of the [FAA's] substantive law that attacks on the validity of [a] contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008))); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Parm*, 835 F.3d at 1335 ("Only

---

[3] Hall cites *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152 (Ala. 2016), as support. Unlike the Stake provision, the arbitration agreement in *Hoffman* was expressly tied to illegal gambling, as it stated "[a]s a condition of participating in any bingo game, Patron agrees that any and all disputes which cannot be resolved between the parties, claims and causes of action arising out of or connected with any bingo game, or any prizes awarded, or the determination of winners shall be resolved individually, without resort to any form of class action and exclusively by arbitration." *Id.* at 155.

if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole.").

To the extent that Hall specifically attacks the formation of the delegation clause itself, her argument lacks merit. The delegation clause is supported by valid consideration separate and apart from the remainder of the agreement because mutual promises to arbitrate and mutual promises to delegate certain issues to the arbitrator are adequate consideration. *See Ex parte Bill Heard Chevrolet, Inc.*, 927 So. 2d 792, 801–02 (Ala. 2005) (holding that mutual promises to pursue arbitration rather than litigation are sufficient consideration); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1284 (N.D. Ala. 2000) (applying Alabama law); *see also Kelsoe v. Int'l Wood Prods., Inc.*, 588 So. 2d 877, 878 (Ala. 1991) (consideration for a contract exists when "there . . . [is] an act, a forbearance, a determinant, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise."). And as the Supreme Court has recognized, valid delegation clauses must be enforced regardless of whether the larger contract is allegedly void for illegality. *Buckeye Check Cashing, Inc.*, 546 U.S. at 449 (holding that challenges to the legality of a contract as a whole, and not specifically to the arbitration agreement, must go to the arbitrator); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *6 (D. Mass. Jan. 6, 2026) (finding delegation clause supported by valid consideration separate and apart from remainder of contract alleged to be premised on illegal consideration); *Huynh v. Boom Shakalaka, Inc.*, No. 2:25-cv-8121-HDV, 2026 WL 247880, at *4–5 (C.D. Cal. Jan. 28, 2026).

Second, Hall argues that the arbitration agreement and delegation clause are unenforceable for lack of mutual assent and obligation, fraud, and unconscionability. But these too are challenges to the TOC and the arbitration agreement in general, and therefore are issues of arbitrability delegated to the arbitrator. Even if considered in the most gracious light possible, as directed to the delegation clause, Hall's

arguments are far too generalized and therefore do not sufficiently constitute a "specific challenge" to the delegation clause itself. *Attix*, 35 F.4th at 1304 ("[T]o 'directly' or 'specifically' challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.' Challenging a delegation agreement is a matter of substance, not form."). Hall's response "only challenges the arbitration provision generally and therefore falls short of the *Rent-A-Center* pleading requirements." *Parnell*, 804 F.3d at 1148; *see also Jones*, 866 F.3d at 1265 (finding that the delegation clause was not directly challenged when "the heart of [plaintiff's] argumentation was directed at the agreement as a whole.").

While Hall attempts to silo these issues into ones directed solely to the arbitration agreement and delegation clause, they are really attacks that go to the parties' agreement as a whole and their relationship in general. At best, Hall's arguments challenging the delegation clause are intertwined and equally applicable to her arguments challenging the arbitration agreement and the contract as a whole. When this is the case, these types of disputes are for the arbitrator. As such, Hall's claims surrounding mutuality, fraud, and unconscionability are all for the arbitrator to decide. To the extent they are not, Hall has not sufficiently shown that the delegation clause is unenforceable because there is nothing inherently unconscionable about a delegation clause and the pertinent clause here is supported by mutual promises and is clear in its language. Contrary to Hall's arguments, Stake's ability to change or add terms does not render the delegation clause unenforceable because the player is given adequate notice if the terms are amended. *See, e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320–21 (11th Cir. 2017) (holding change-in-terms provision enforceable because it required advance notice); *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 245–46 (11th Cir. 2021) (holding

change-in-terms provision enforceable because it required thirty-days advance notice).

Lastly, Hall argues that Count I of her Complaint falls outside the scope of the arbitration agreement and that the arbitrator cannot award her the declaratory relief that she seeks.[4] Whether the arbitration agreement covers this claim is an issue of arbitrability that the parties expressly delegated to an arbitrator. Further, the declaratory judgment claim is nothing more than a claim centered upon the merits of Hall's other claims—the legality of the Stake website under Alabama law. Whether couched as damages, injunctive relief, a declaratory judgment claim, a violation of Alabama Code § 8-1-150, or a violation of the Alabama Deceptive Trade Practices Act, it is a merits-based claim that clearly falls within the scope of the arbitration agreement. *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 687 (S.D. Fla. 2001) ("Where a complaint presents squarely arbitrable issues for adjudication, a party may not sidestep arbitration by selectively couching the underlying dispute in terms of 'fraud' or 'breach of contract' or 'declaratory judgment.' In determining whether a particular claim falls within the scope of the parties' arbitration agreement, a court must focus on the allegations in the complaint rather than the legal causes of action asserted."). And to the extent that Hall says it does not, that is an issue for the arbitrator.

## CONCLUSION

Hall's opposition to Stake's arbitration motion raises issues of arbitrability that must be submitted to the arbitrator for resolution. Since these are arbitrable disputes, section 3 of the FAA compels the Court to stay these proceedings. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, all of Hall's claims against Stake will be

---

[4] There is no reason that a declaratory judgment action cannot be sent to an arbitrator. *See Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224, 225 (11th Cir. 2011) (affirming district court order compelling arbitration of a declaratory judgment claim).

stayed pending conclusion of the arbitration proceeding.[5] The Court expresses no opinion on the merits of Hall's claims or on the underlying arbitrability of her claims. *See Attix*, 35 F.4th at 1309 (addressing only who decides "whether the parties must arbitrate").

Accordingly, it is **ORDERED** as follows:

(1)   Defendant's *Motion to Compel Arbitration* (doc. 27) is **GRANTED**;

(2)   The parties are compelled to arbitration pursuant to the arbitration agreement contained in the TOC;

(3)   This case is **STAYED** pending conclusion of the arbitration; and

(4)   On or by **July 1, 2026**, the parties shall file a status report concerning the arbitration, and shall file updated reports every 90 days thereafter.

**DONE** and **ORDERED** on this the 12th day of March 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Because Plaintiff J.S.'s claims are derivative of Hall's, J.S. "must also abide by the terms of any valid agreement, including an arbitration agreement." *Zynga, Inc. v. Mills*, Nos. SC-2024-0454 & SC-2024-0455, 2025 WL 1198744, at *5 (Ala. Apr. 5, 2025) (quoting *SouthTrust Bank v. Ford*, 835 So. 2d 990, 994 (Ala. 2002)).